OPINION
{¶ 1} Appellant, Kecia J. Green, appeals from a judgment entry of the Ashtabula County Court of Common Pleas, convicting her on one count of complicity to aggravated robbery; one count of complicity to theft; and three counts of complicity to kidnapping. For the reasons that follow, we affirm.
 {¶ 2} On January 23, 2002, the Ashtabula County Grand Jury indicted appellant on one count of complicity to aggravated robbery, a first degree felony in violation of R.C. 2923.03 and2911.01(A)(1); one count of complicity to theft, a fifth degree felony in violation of R.C. 2923.03 and 2913.02(A)(4); and three counts of complicity to kidnapping, each a second degree felony in violation of R.C. 2923.03 and 2905.01(A)(2). Each count included a firearm specification.
 {¶ 3} Appellant entered a plea of not guilty at her arraignment. The court scheduled appellant for a joint trial with her co-defendant Jameel Banks. Appellant filed a motion for a separate trial which was denied by the trial court. On August 11, 2003, one day prior to the joint trial, appellant filed a motion to dismiss based upon speedy trial violations. The court denied appellant's motion to dismiss. Also, just prior to trial, appellant filed a motion for mistrial. Appellant asserted that a local newspaper article disclosing her co-defendant's incarceration for a prior robbery would be prejudicial to her penal interests if read by the jury. The trial court found that there was no evidence that the jury read the article and noted that the jury had previously been instructed that they were to refrain from reading articles regarding appellant and her co-defendant. Thus, the court denied appellant's motion for a mistrial.
 {¶ 4} This matter proceeded to a joint trial before a jury on August 12, 2003. The facts revealed that on the evening of December 22, 2001, an Aldi's supermarket in Ashtabula County, Ohio, was robbed. Three store employees, who were present during the robbery, testified to the factual events of the robbery.
 {¶ 5} At approximately 7:00 p.m., on December 22, 2001, an Aldi's employee closed the store to any incoming customers, while the remaining customers finished shopping. A few minutes later, the employee proceeded to the store restrooms for a final clean up. Upon entering one of the restrooms, the employee was confronted by a man wearing a ski mask and holding a gun. The perpetrator demanded that the employee bring him to the store's office. The employee complied. Once in the office, the perpetrator opened the employee's cash register till, which was empty.
 {¶ 6} Meanwhile, a co-worker "buzzed" the employee, which signaled the employee to proceed to the front of the store and ring out the final customers. The perpetrator instructed the employee to page the store's assistant manager. The employee obeyed the perpetrator's order.
 {¶ 7} The assistant manager and co-worker, who were the only other employees at the store, responded to the page. When the assistant manager and co-worker opened the office door they were confronted by the perpetrator, as he pointed a gun at both of them. He bound the feet and hands of the assistant manager and co-worker with duct tape, but then cut loose the binds to allow them to open their register tills. After taking money from the register tills, the perpetrator commanded the assistant manager to open the store's safe. The assistant manager informed the perpetrator that she was unable to open the safe.
 {¶ 8} Importantly, all three store employees testified that throughout the robbery appellant was communicating to an individual outside the store via cell phone. The testimony established that the perpetrator was speaking with a female who was providing information that assisted with the robbery. Witness testimony established that appellant fled the store around 8:00 p.m.
 {¶ 9} Directly across the street from the Aldi's was a Burger King. Testimony from a patron of the Burger King revealed the following. At approximately 7:35 p.m., on December 22, 2001, the Burger King patron noticed appellant talking very loudly on her cell phone. While at Burger King, appellant used her cell phone on multiple occasions. Further testimony demonstrated that appellant was preoccupied with Aldi's as she constantly walked outside and looked across the street into the store. Appellant's suspicious behavior was reported to the Ashtabula County Police Department.
 {¶ 10} Shortly after the robbery had ended, the police questioned appellant at the Burger King. Appellant told the police that she was waiting at the Burger King for her sister to pick her up. However, appellant was unable to provide the police with her sister's name. She also stated that her sister was driving a "poopy brown" Ford Taurus and that her sister was shopping at a local mall. The police attempted to locate the sister, but they were unable to find a Ford Taurus matching appellant's description and the sister failed to pick up appellant. During the police questioning, appellant received a call on her cell phone from an unknown individual and then used her cell phone to make a call. The police continued to question appellant and ultimately arrested her that night, based upon her alleged participation in the robbery.
 {¶ 11} During the joint trial, the prosecution presented evidence of various items found in the car of co-defendant, Jameel Banks, which was left abandoned in the Aldi's parking lot on the night of the robbery. These items included a cell phone bill that belonged to appellant, slips of paper detailing appellant's home address and telephone numbers, and a cell phone battery that was compatible with appellant's cell phone.
 {¶ 12} The prosecution also introduced evidence with respect to DNA testing of cigarette butts that were left in the abandoned automobile of co-defendant, Jameel Banks. The evidence established that the DNA removed from the cigarette butts was consistent was appellant's DNA.
 {¶ 13} Finally, the prosecution provided evidence of appellant's cell phone use on the night of December 22, 2001. The cell phone company's records established that appellant's cell phone was used to place calls to the co-defendant's cell phone, and receive calls from the co-defendant's cell phone, forty-eight times between the hours of 6:55 p.m. and 10:55 p.m, on the night of the offenses.
 {¶ 14} Following the joint trial, the jury found appellant and her co-defendant guilty. Accordingly, the court entered judgment convicting appellant of one count of complicity to aggravated robbery, one count of complicity to theft, and three counts of complicity to kidnapping, with a firearm specification included on all counts. The trial court sentenced appellant to serve an aggregate eleven-year term at the Ohio Reformatory for Women.
 {¶ 15} From this judgment, appellant has filed a timely notice of appeal and now sets forth the following four assignments of error for our consideration:
 {¶ 16} "[1.] The trial court erred by failing to dismiss the charges as the trial violated the appellant's statutory speedy trial protections pursuant to R.C. § 2945.71.
 {¶ 17} "[2.] The trial judge erred by failing to inquire into the possibility that the jury was exposed to a prejudicial newspaper article during the jury selection.
 {¶ 18} "[3.] The verdicts were against the Weight of the Evidence.
 {¶ 19} "[4.] The trial court erred by failing to grant the appellant's motion for separate trials."
 {¶ 20} Under her first assignment of error, appellant contends that the trial court had violated her constitutional and statutory rights to a speedy trial because the joint trial occurred beyond 270-days from her arrest. We disagree.
 {¶ 21} "The standard of review of a speedy trial issue is to count the days of delay chargeable to either side and determine whether the case was tried within the time limits set by R.C. 2945.71." State v. Blumensaadt, 11th Dist. No. 2000-L-107, 2001-Ohio-4317, 2001 Ohio App LEXIS 4317, at 17. When determining whether the state has violated a defendant's constitutional and statutory right to a speedy trial, the court weighs the length of the delay, the reasons for the delay, the defendant's timeliness and manner of asserting this right, and whether the defendant has suffered identifiable prejudice. State v. Burgess, 11th Dist. No. 2003-L-069, 2004-Ohio-4395, at ¶ 31, citing State v.Broughton (1991), 62 Ohio St.3d 253, 256.
 {¶ 22} Once a defendant establishes that he or she was not brought to trial within the applicable speedy trial limits, they have set forth a prima facie case for dismissal. State v. Baker
(1993), 92 Ohio App.3d 516, 525. The burden then shifts to the state to provide evidence indicating that the defendant's constitutional and statutory right to a speedy trial was not violated. Id. at 525-526.
 {¶ 23} In the instant case, appellant was charged with five felony counts. Under R.C. 2945.71(C)(2), an individual charged with a felony count "[s]hall be brought to trial within two hundred seventy days after the person's arrest." However, an extension of the 270-day time limit is permissible under R.C.2945.72(E), to wit:
 {¶ 24} "The time within which an accused must be brought to trial * * * may be extended only by the following:
 {¶ 25} "* * *
 {¶ 26} "(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused[.]"
 {¶ 27} A thorough review of the record before us demonstrates that appellant's various motions tolled the statutory time limit and, therefore, appellant's constitutional and statutory right to a speedy trial was not violated.
 {¶ 28} Appellant was arrested on December 22, 2001, but the 270-day statutory time limit did not begin to run until the day after her arrest. See, e.g., State v. Jones (1997),199 Ohio App.3d 59. From December 23, 2001, until December 24, 2001, appellant was incarcerated. Due to her incarceration, these two days fell under the triple count provision of R.C. 2945.71(E) and counted as six days against the statutory time limit.
 {¶ 29} Appellant posted bond and was released on December 24, 2001. The statutory time limit then accrued three days, for a total of nine days, until December 28, 2001, when appellant was scheduled to attend a preliminary hearing. Appellant failed to attend the preliminary hearing and the trial court issued a capias order. The language of R.C. 2945.71(C)(2) clearly states that the statutory time limitation for a speedy trial may be tolled for any action by the defendant which causes a delay. Moreover, R.C. 2945.72(D) allows the tolling of the speedy trial time limits when there is "[a]ny period of delay occasioned by the neglect or improper act of the accused." Appellant's improper actions in failing to attend the preliminary hearing clearly delayed the trial court proceedings. Accordingly, the statutory time limitation was tolled until January 3, 2002, when appellant appeared for the rescheduled preliminary hearing.
 {¶ 30} The 270-day time limit began running again on January 4, 2002, and continued to accrue until April 8, 2002. This accrual represented 95 days in addition to the previous 9 day accumulation, for a total of 104 days. On April 8, 2002, appellant filed a motion requesting discovery and requesting a bill of particulars, thereby tolling the time limit until May 8, 2002, when the state responded with the requested discovery and a bill of particulars. Thus, the speedy trial time limit began to run on May 9, 2002.
 {¶ 31} From May 9, 2002, the time limit accrued until May 31, 2002, an accumulation of twenty-three days. This twenty-three day period combined with the 104 day total equals the sum of 127 days. On May 31, 2002, appellant filed a motion to extend the time to file her pre-trial motions. Accordingly, the statutory speedy trial time limit tolled until the trial court issued its June 5, 2002 decision on appellant's motion to extend.
 {¶ 32} The time limit commenced running on June 6, 2002, and ran until July 11, 2002, when appellant filed a motion to withdraw her counsel. This time period represents an additional 35 days to be added to the previous total of 127 days. Thus, the 270-day time limit had run for 162 days. Appellant's motion to withdraw counsel extended the time limit until July 16, 2002, when the trial court issued its order granting the withdrawal. See, e.g., State v. Ward, 5th Dist. No. 03 CA 60,2004-Ohio-2323, at ¶ 19.
 {¶ 33} The statutory time limit resumed running on July 17, 2002, and continued running until appellant filed a motion to continue the trial date, a motion to suppress, and a motion requesting a separate trial on July 30, 2002. This period of time represents an accumulation of fourteen days, for a total of 176 days. The statutory time period commenced on September 10, 2002, one day after the court issued its decisions on these motions.
 {¶ 34} The time limit ran for a period of 52 days from September 10, 2002 until October 31, 2002, increasing the total accrued time to 228 days. On October 31, 2002, appellant filed a motion for continuance of trial date and waiver of speedy trial time. The waiver stated that appellant waived the time for a speedy trial time until May 31, 2003. The court granted appellant's motion to continue and waiver of speedy trial time.
 {¶ 35} On April 15, 2003, prior to the expiration of appellant's waiver of speedy trial, the trial court granted the state a continuance of the scheduled trial date. Specifically, the court reset the trial date for July 15, 2003, based upon the unavailability of a key testifying witness, the Sheriff of Ashtabula County, and R.C. 2945.72(H). Pursuant to R.C.2945.72(H), the speedy trial time limit is tolled by "any reasonable continuance granted other than upon the accused's own motion."
 {¶ 36} In the instant case, the court's continuance of the trial date until July 15, 2003, was reasonable based upon the absence of a key witness. See, e.g., State v. Bolt (Dec. 3, 1999), 11th Dist. Nos. 98-L-067 and 98-L-068, 1999 Ohio App. LEXIS 5766; State v. Egart (June 26, 1998), 11th Dist. No. 96-A-0073, 1998 Ohio App. LEXIS 2893. Thus, the speedy trial time limit was tolled beyond May 31, 2003, until July 15, 2003.Bolt; Egart.
 {¶ 37} Due to delays not attributable to appellant, the date of trial was rescheduled for August 12, 2003. Accordingly, the time for speedy trial began to accrue on July 16, 2003, and ran until August 11, 2003, when appellant filed her motion to dismiss. This represents a span of 27 days. When the 27 days is added to the prior total of 228 days, the new total is 255 days.
 {¶ 38} The joint trial began on August 12, 2003, which, pursuant to R.C. 2945.71(C)(2) and 2945.72(E), was 255 days from the date of appellant's arrest, fifteen days before the 270-day time limit ended. Thus, appellant's first assignment of error is without merit.
 {¶ 39} For purposes of clarity, we will now address appellant's fourth assignment of error. Under her fourth assignment of error, appellant contends that the trial court erred by failing to grant her motion for a separate trial. In doing so, appellant maintains that she was prejudiced by the joint trial, as the co-defendant's motion to continue the trial date tolled the speedy trial time limitations to her prejudice.
 {¶ 40} Crim.R. 14 states as follows:
 {¶ 41} "If it appears that a defendant * * * is prejudiced by a joinder of * * * defendants * * * the court shall * * * grant a severance of defendants[.]"
 {¶ 42} Therefore, appellant was required to show that a joint trial somehow acted to her prejudice. Although appellant claims that prejudice resulted from her co-defendant's motion to continue, our analysis under appellant's first assignment of error does not rely upon this motion to extend the time limit for a speedy trial. Instead, our analysis has demonstrated that even when disregarding any possible tolling attributed to the co-defendant's motion to continue, appellant was still brought to trial within 270 days of her arrest. Accordingly, appellant cannot establish any prejudice requiring a severance of the defendants, and the court did not err by denying her motion for a separate trial. Appellant's fourth assignment of error is without merit.
 {¶ 43} Under her second assignment of error, appellant contends that the trial court erred by denying her motion for a mistrial, as the court failed to question the jury regarding its exposure to a prejudicial newspaper article. Appellant maintains that the court's failure to investigate whether the jury was exposed to the newspaper article warrants a reversal.
 {¶ 44} The grant or denial of a motion for mistrial rests in the sound discretion of the trial court and will not be disturbed on appeal absent an abuse of discretion. Crim.R. 33; State v.Sage (1987), 31 Ohio St.3d 173, 182. "A mistrial should not be ordered in a criminal case merely because some error or irregularity has intervened * * *." State v. Reynolds (1988),49 Ohio App.3d 27, 33.
 {¶ 45} Here, appellant moved the court for a mistrial based upon the pretrial publication of a newspaper article which revealed a prior crime committed by her co-defendant. The court had provided the jury with instructions prior to the article's publication. Although appellant moved for a mistrial, she did not request a voir dire of the jury to determine whether the jury had been exposed to the article. The trial court denied the motion reasoning that the jury is presumed to have complied with its instructions to refrain from reading any newspaper articles relating to appellant and the co-defendant. The court also noted that there was no evidence that the jury had viewed the article and, therefore, prejudice would not be presumed.
 {¶ 46} The right to a jury trial guarantees a defendant a fair trial by impartial jurors. State v. Adams,103 Ohio St.3d 508, 2004-Ohio-5845, at ¶ 48. However, "`pretrial publicity — even pervasive, adverse publicity — does not inevitably lead to an unfair trial.'" Id., quoting Nebraska Press Assn. v. Stuart
(1976), 427 U.S. 539, 554. Instead, "[c]ourts rarely presume that a jury is prejudiced by pretrial publicity." State v.Cunningham, 105 Ohio St.3d 197, 2004-Ohio-7007, at ¶ 30. Moreover, there is a presumption that the jury followed the court's jury instructions. State v. Davie (Dec. 27, 1995), 11th Dist. No. 92-T-4693, 1995 Ohio App. LEXIS 6064, at 28, citingState v. DePew (1988), 38 Ohio St.3d 275, 284.
 {¶ 47} In the case subjudice, appellant fails to establish that she was prejudiced by a single newspaper article regarding her co-defendant. Absent is any evidence that the jurors ignored the court's instructions to refrain from reading newspaper articles relating to the instant criminal proceedings. To the contrary, appellant's motion for a mistrial was predicated solely upon her presumption that a juror read the newspaper article. This presumption, standing alone, did not require a mistrial.
 {¶ 48} In addition, even assuming appellant had requested a voir dire of the jury, the court could deny such a request. Appellant's claim of prejudice was based merely upon the fact that there had been a single newspaper article published regarding appellant's co-defendant. Such a denial would not demonstrate an abuse of the court's discretion to voir dire the jury. See, e.g., State v. Nelson, 8th Dist. No. 81558, 2003-Ohio-3219, at ¶ 27. Thus, appellant's second assignment of error is without merit.
 {¶ 49} Under her third assignment of error, appellant argues that her convictions were against the manifest weight of the evidence. In particular, appellant maintains that testimony at trial established an inconsistent time frame, which proved she did not assist appellant during the robbery.
 {¶ 50} When reviewing a claim that a judgment was against the manifest weight of the evidence, an appellate court must review the entire record, weigh both the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that a new trial must be ordered. State v. Martin (1983),20 Ohio App.3d 172, 175. See, also, State v. Thompkins,78 Ohio St.3d 380, 387, 1997-Ohio-52.
 {¶ 51} "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Martin at 175. The role of the appellate court is to engage in a limited weighing of the evidence introduced at trial in order to determine whether the state appropriately carried its burden of persuasion. Thompkins
at 390 (Cook, J., concurring). The reviewing court must defer to the factual findings of the trier of fact as to the weight to be given the evidence and the credibility of the witnesses. Statev. DeHass (1967), 10 Ohio St.2d 230, paragraph two of the syllabus.
 {¶ 52} When assessing witness credibility, "[t]he choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact."State v. Awan (1986), 22 Ohio St.3d 120, 123. "Indeed, the factfinder is free to believe all, part, or none of the testimony of each witness appearing before it." Warren v. Simpson (Mar. 17, 2000), 11th Dist. No. 98-T-0183, 2000 WL 286594, at 3. Furthermore, if the evidence is susceptible to more than one interpretation, a reviewing court must interpret it in a manner consistent with the verdict. Id.
 {¶ 53} In the instant case, the testimony with respect to the sequential factual events was consistent with appellant's participation in the robbery. The testimony established that the robbery commenced just a few minutes after 7:00 p.m. and ended just before 8:00 p.m. A patron of Burger King testified that she noticed appellant talking on her cell phone and walking outside to look across the street into the Aldi's at approximately 7:30 p.m.
 {¶ 54} Evidence demonstrated that appellant's cell phone was used on multiple occasions between 7:00 p.m. and 8:00 p.m. to receive cell phone calls from her co-defendant and place cell phone calls to her co-defendant. Appellant failed to provide any evidence that would contradict that she had numerous communications with her co-defendant during the robbery via cell phone. The testimony of the Aldi's employees established that the co-defendant was in contact with a female outside the store who assisted him throughout the robbery. Moreover, evidence retrieved from the co-defendant's car, which was abandoned in the Aldi's parking lot, directly linked the appellant to the co-defendant.
 {¶ 55} That being said, there was abundant competent, credible evidence that established appellant assisted the co-defendant in the robbery of the Aldi's store. There was nothing to demonstrate that this evidence was unbelievable or incredible. Thus, appellant's convictions were not against the manifest weight of the evidence. Appellant's third assignment of error is without merit.
 {¶ 56} Based upon the foregoing analysis, appellant's four assignments of error are without merit. We hereby affirm appellant's convictions.
Rice, J., concurs, O'Neill, J., dissents with Dissenting Opinion.