OPINION
This timely appeal arises from a jury verdict in the Court of Common Pleas, Harrison County, convicting Lewis Sedgmer ("Appellant") of four counts of rape involving a person less than thirteen years of age. For the following reasons, this Court affirms the judgment of the trial court.
On September 16, 1999, a grand jury issued an indictment charging Appellant with five counts of rape in violation of R.C. §2907.02(A)(1)(b) in connection with the sexual abuse of his biological daughter ("victim"). According to the indictment and bill of particulars, between October 1, 1993, and April 1, 1998, Appellant forced the victim to perform fellatio on him in the upstairs bathroom of the family home. It was further alleged that Appellant inserted his fingers into the victim's vagina and, on at least one occasion, attempted penal intercourse with the victim but was unsuccessful. The incidents occurred during the afternoons after school approximately two to three times a week, eventually declining to once a week before stopping altogether. The victim's parents split up sometime during 1998, and the victim first confided the abuse to her mother and her mother's friend in December of 1998.
Because the alleged victim was under the age of ten when the abuse first allegedly transpired, the Court commenced a hearing to determine whether she was competent to accurately recollect and recount the alleged incidents. Although Appellant asked to be present during the hearing, the trial court denied the request, noting that it would be "highly inappropriate" to have the victim's parents present. (2/14/00 Hearing Tr. p. 4).
At the competency hearing the trial court gave both sides the opportunity to submit proposed questions for the victim. Although the victim's responses to some of the questions were not always completely accurate, the trial court noted — and defense counsel agreed — that any discrepancies were relatively minor. (2/14/00 Hearing Tr. pp. 13-14). Ultimately, the court concluded that the victim was competent to testify. (2/14/00 Hearing Tr. p. 11).
Prior to trial, the prosecution voluntarily dismissed Count One of the indictment due to apparent factual discrepancies between the allegations as found in the indictment and those submitted in the bill of particulars. Curious about the source of the discrepancy, Appellant requested a copy of the grand jury transcript so that the credibility of the victim's trial testimony could be tested against her grand jury testimony. (2/24/00 Motion Tr. p. 22). When it became clear that a transcript would not be completed for several days, the trial court offered Appellant a one-week continuance. (Trial Tr. p. 126). Appellant chose to forego a continuance. (Trial Tr. p. 127).
During this same pretrial proceeding the prosecution submitted several exhibits, previously undisclosed to the defense, which were intended to be introduced at trial. (2/24/00 Motion Tr. p. 30). Among the items was a step stool that the prosecution contended Appellant used to facilitate the abuse. According to the prosecution, Appellant would typically stand on the step stool as he forced the victim to perform fellatio while she perched on the bathroom sink. (Trial Tr. p. 224).
Claiming surprise, Appellant argued that the introduction of the evidence violated Criminal Rule 16. Seeking to avoid prejudice to the Appellant by the prosecution's late disclosure, the court offered a one-day continuance. (2/24/00 Motion Tr. p. 33). Appellant's trial counsel again declined the offer of continuance. (2/24/00 Motion Tr. p. 36).
Trial commenced later the same day. The victim testified first, providing a detailed account of the abuse she encountered between 1993 and 1998. The victim also testified that when she was in the fourth and fifth grades, Appellant would occasionally take her and a friend, her next door neighbor, to the family's garage where he would encourage the girls to dress in old lingerie. Appellant would coax the girls to model the lingerie for him by giving them whiskey and beer, while Appellant, clad in pantyhose and a T-shirt, watched from a cupboard in a corner of the room. (Trial Tr. pp. 241-245).
The prosecution called several other witnesses. Among these, Lisa Luini, a close friend of the victim's mother, testified. Ms. Luini confirmed that she was present in December of 1998 when the victim first told her mother that Appellant had sexually abused her. (Trial Tr. pp. 408-411). School and police personnel who interviewed the victim about the sexual abuse testified for the prosecution. Dr. Anita Exley, a clinical psychologist who had been treating the victim since the abuse was reported was called. Dr. Exley, an expert in the area of child sexual abuse, testified that the victim exhibited characteristics consistent with other sexual abuse cases she had studied. (Trial Tr. pp. 296-309).
In defense, Appellant relied in part on character witnesses who vouched for his reputation as an honest, decent, and hardworking member of the community. Defense witnesses also observed that Appellant appeared to have normal parent/child relationships with his kids. (Trial Tr. pp. 450, 468). Appellant himself testified that he had never been accused of a crime before this one and vehemently denied that he had sexually violated his daughter. (Trial Tr. pp. 502-503).
In addition, the victim's brother testified on Appellant's behalf. According to the brother, the abuse could not have occurred as the victim alleged. He recalled that Appellant was often at work when the two children arrived home from school, and then both were required to complete their respective homework assignments before going out to play. (Trial Tr. pp. 483-485). The victim's brother further stated that he was generally in the house during the times when the victim claims that she was abused, yet he never saw his father and sister in the bathroom together, nor did he notice anything otherwise unusual about their activity. (Trial Tr. p. 488).
The defense also called the neighbor girl, apparently anticipating that she would deny that the incidents involving the victim and Appellant in the garage had ever taken place. The girl surprised the defense, however, by recanting her previous denials and confirmed that on several occasions she and the victim had modeled lingerie for Appellant in the garage. (Trial Tr. pp. 430-431).
After approximately two and one-half hours of deliberation, the jury found Appellant guilty of four counts of rape involving a person under the age of thirteen. On June 7, 2000, the trial court sentenced Appellant to an aggregate prison term of 17 to 25 years. (Judgment Entry, June 7, 2000). Appellant filed his notice of appeal to this Court on June 19, 2000.
In his first assignment of error Appellant contends that,
 "APPELLANT WAS DENIED HIS STATE AND FEDERAL CONSTITUTIONAL RIGHTS TO DUE PROCESS OF LAW AND PLAIN ERROR OCCURRED WHEN APPELLEE'S EXPERT WITNESS RENDERED AN OPINION AS TO THE VERACITY OF THE ALLEGED VICTIM."
Appellant argues that the trial court committed plain error by allowing the prosecution's expert witness to offer her opinion that the victim's allegations were credible. Under Crim.R. 52(B), plain errors or defects which are not brought to the attention of the trial court may nevertheless be addressed where such errors affect substantial rights. "[T]he plain error test is a strict one: that an alleged error does not constitute plain error or defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise." Statev. Murphy (2001), 91 Ohio St.3d 516, 532, quoting State v. Long (1978),53 Ohio St.2d 804, paragraph two of syllabus.
The evidence about which Appellant complains was elicited during the testimony of Dr. Anita Exley, the victim's treating psychologist. (Trial Tr. p. 305). After qualifying as an expert on child sexual abuse, Dr. Exley testified that she had seen the victim on numerous occasions since the abuse was reported. She then detailed certain impressions that she had developed since first treating the victim. The doctor also testified that based on her experience, which included the treatment of some 200 children, the victim exhibited many of the characteristics she had previously observed in cases of verifiable sexual abuse. (Trial Tr. pp. 300, 313).
Specifically, Dr. Exley identified the following factors as corroborative of sexual abuse claims:
"The consistency of her story, the fact that she tells a similar story each time with the main parts not changing, the fact that when she first disclosed to me she was very uncomfortable and didn't didn't want to talk about it and that her at this point her main concern is just that she be able to tell what happened. That's her primary motivation at this point. I don't see any what we would call secondary gain, which is I don't think there's anything that she can get out of making up a story. So I do look at what's happening in a person's family life, is there something she's going to get out of it. I don't see anything that she could get out of it. I think that she has a lot to lose by telling what has happened to her." (Trial Tr. p. 313).
Appellant argues that such testimony is inadmissible because it indirectly offers the expert's opinion that the victim and her allegations are credible. According to Appellant, State v. Boston
(1989), 46 Ohio St.3d 108, prohibits the introduction of such testimony.
In Boston, the Supreme Court held that it was reversible error to admit expert testimony wherein that witness vouches for the credibility of another. Boston, supra, at 128. There, a child psychologist opined that the alleged victim had neither fantasized her abuse, nor been programmed to make accusations. The court observed that in so testifying, the witness, in effect, had declared that the victim was truthful.
In so concluding, the Court in Boston stressed that our system of justice requires the factfinder, not the so-called expert or lay witnesses, to assess the credibility and veracity of witnesses. Id. at 129, citing State v. Eastham (1988), 39 Ohio St.3d 307, 312, Brown, J. concurring.
In State v. Stowers (1998), 81 Ohio St.3d 260, the Court reexamined and reaffirmed its reasoning in Boston. In so doing, the Court noted that while Boston barred the expert from usurping the function of the jury by essentially attesting to the credibility of the victim at issue, it did not, "proscribe testimony which is additional support for the truth of the facts testified to by the child, or which assists the fact finder in assessing the child's veracity." (Emphasis added). Id. at 262-263.
A review of Dr. Exley's testimony reveals that she did not offer an opinion about whether the victim's allegations were true. Instead, she gave the jury information concerning the victim and her behavior in general to assist the jury in determining whether or not the victim's allegations were credible. Dr. Exley testified that it was "common" for a person being counseled not to be specific about the details, and, "that it was not unusual to have a disclosure of many years after the abuse occurred." (Trial Tr. pp. 308-309). According to Dr. Exley, at first the victim, "* * * sat kind of hunched over and didn't * * * make a lot of eye contact." (Trial Tr. p. 304). "The last few times I've seen [the victim], * * * she'll make good eye contact with me and talk with me. She doesn't look away, seems more confident * * *." (Trial Tr. p. 305). Dr. Exley also testified that "the statement never changed. It never changed to me." (Trial Tr. p. 307). These are all simply observations Dr. Exley made over the course of numerous sessions with the victim.
Dr. Exley's testimony does not amount to a statement about the victim's veracity. Her observations, however, do provide information through which the jury may be assisted in reaching its own conclusions with respect to the victim's credibility. Consequently, Dr. Exley's testimony was consistent with the limitations articulated in Boston and Stowers.
The opinion testimony at issue here contrasts markedly with that challenged on similar grounds in State v. Pizzillo (January 17, 2002), Carroll App. No. 746, unreported. In Pizzillo, we concluded that the trial court committed plain error when it allowed a social worker to offer her opinion that an alleged victim of child abuse had been lying when, during one interview, she denied having suffered abuse. The social worker was specifically asked and specifically offered an opinion that the victim was lying when she initially denied that abuse took place during the following colloquy:
 "`Q. On June 16th, 2000, you went to the school of [the victim] to interview her, is that correct, one of your purposes?
`A. Yes.
 `Q. In fact [the victim] told you there was no inappropriate sexual conduct in the home, is that correct?
`A. Right.
 `Q. Yet you made arrangements on the 16th, when she failed to disclose, to interview other peers and continue her investigation, is that correct?
`A. Right.
 `Q. And isn't it a fact based upon your 10 years experience, your training, education, experience, that you did not believe that she was telling you the truth on June 16th, 2000 when you were questioning her whether or not she was being sexual (sic) abused?
`A. Right.
 `Q. Can you tell the members of the jury why you knew [the victim] was lying to you during your interview on June 16th, 2000?'"
 Pizzillo at pp. 13-14. The social worker then goes on to discuss the victim's "body language" during the interview in question. BecausePizzillo relied entirely on victim credibility and because the social worker distinctly testified that the victim was lying when she denied abuse was taking place during the school interview, we concluded that this testimony was highly prejudicial and it was error for the trial court to have admitted it.
Our conclusion in the instant case is entirely consistent with the reasoning we employed in Pizzillo. Rather than directly testifying as to the veracity of the victim's allegations, Dr. Exley merely shared her observations and perceptions as to the victim's demeanor in light of her contact with the victim and her professional experience. The record reflects that those perceptions were relevant, material and competently provided. Appellant's first assignment of error is, therefore, overruled.
In his second assignment of error, Appellant maintains that,
 "THE PREPARATION AND PERFORMANCE OF APPELLANT'S TRIAL COUNSEL WAS DEFICIENT AND PREJUDICED APPELLANT IN SUCH A WAY AS TO VIOLATE APPELLANT'S RIGHTS AS GUARANTEED BY THE SIXTH, EIGHTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."
Appellant claims that his trial counsel's performance was ineffective in several respects and speculates that, but for these errors, the result of his trial would have been different. First, Appellant complains of trial counsel's failure to object to Dr. Exley's testimony. Second, Appellant challenges trial counsel's failure to take advantage of two continuances the trial court offered, one to remedy an apparent discovery violation, the other so that a copy of the victim's grand jury testimony could be prepared. Third, Appellant charges that trial counsel's overall preparation and performance were substandard. Appellant specifically directs this Court to the following: trial counsel's failure to interview the neighbor girl prior to calling her as a witness in the defense case; his failure to adequately question Appellant during his testimony in defense of the allegations; and his failure to call key witnesses on Appellant's behalf.
According to Appellant the aforementioned lapses individually and cumulatively prejudiced Appellant's case. After a full review of the trial court record, we must disagree.
Judicial scrutiny of trial counsel's performance is highly deferential. State v. Bradley, 42 Ohio St.3d 136, 142; citing Stricklandv. Washington (1984), 466 U.S. 668, 689. Accordingly, to maintain a claim that trial counsel was ineffective, Appellant must meet two requirements. First, he must show that trial counsel's performance was so deficient and his, "* * * errors so serious that [he] was not functioning as the counsel guaranteed the defendant by the Sixth Amendment."Strickland, supra at 687. Second, Appellant must demonstrate that the deficient performance prejudiced the defense. Id., see also State v.Lytle (1976), 48 Ohio St.2d 391, 397, vacated in part on other grounds,438 U.S. 910. Appellant cannot meet either of the above stated thresholds.
While counsel must consult with his client on important trial decisions, great latitude is afforded in matters of trial strategy. Statev. Smith (1985), 17 Ohio St.3d 98, 101. Debatable trial tactics typically do not constitute ineffective assistance of counsel. State v. Clayton
(1980), 62 Ohio St.2d 45, 47. Thus, in seeking to prove his counsel's ineffectiveness, Appellant must overcome a presumption that the undertakings of a properly licensed attorney are sound trial strategy.Strickland, supra at 689. Moreover, the benefit of hindsight will not be allowed to distort the assessment of what was reasonable given trial counsel's perspective at the time. State v. Cook (1992),65 Ohio St.3d 516, 524-525.
At the outset, this Court notes any challenge to counsel's failure to object to Dr. Exley's testimony is necessarily doomed. As this Court noted in addressing Appellant's first assignment of error, Dr. Exley's testimony was relevant and entirely admissible. Therefore, counsel was not ineffective in failing to object.
Nor does the record support Appellant's claim that trial counsel was ineffective when he decided to proceed to trial rather than accept two continuances offered by the trial court. To the contrary, trial counsel's decisions to forego the continuances appear to be reasonable tactical moves under the circumstances.
The record reflects that at the time the continuances were offered, the defendant's witnesses had already been subpoenaed to appear for trial the next day. (Trial Tr. p. 127). Accordingly, rather than risk losing witnesses, counsel opted to forego the continuances. (Trial Tr. p. 127).
Reviewing courts are reluctant to second-guess professional judgment calls made by counsel during the heat of trial. State v. Smith (2000),87 Ohio St.3d 424, 426. Moreover, the record demonstrates that Appellant agreed with, or at least acquiesced in, trial counsel's strategic decision to proceed without the continuances.
The other purported errors of trial counsel Appellant identifies are not of sufficient magnitude to undermine this Court's confidence in the outcome of this trial. Appellant complains that counsel's failure to properly interview the neighbor girl prior to calling her as a defense witness rendered his performance constitutionally ineffective. Trial counsel called her as a witness on behalf of the defense because he expected that, based on her previous statements, she would deny the victim's allegations concerning the so-called lingerie modeling incidents in Appellant's garage.
Whether or not trial counsel interviewed the girl, law enforcement and school officials obviously had. The record indicates that according to reports of those interviews, she appears to have denied participating in the acts in question. (Trial Tr. pp. 431, 434, 435). Accordingly, the defense was obviously surprised when, at trial, the girl reversed herself and admitted that the incidents had, indeed, occurred.
Nevertheless, Appellant is mistaken when he insists that trial counsel's failure to conduct a recorded interview with this witness on his own rather than relying on the reported interviews would have changed the outcome of this case. The fact that the girl suddenly changed her position in the case was made abundantly clear to the jury, both during her direct examination and later during counsel's closing argument. (Trial Tr. p. 524).
The record reflects that when it became clear that the girl intended to contradict her prior accounts, the trial court allowed defense counsel to treat her as a hostile witness. Counsel was then able to put before the jury the inconsistencies between her previous denials and the account she provided at trial, clearly implying that her account was inherently unreliable. (Trial Tr. pp. 431, 435, 436, 438).
The record also fails to support Appellant's claim that trial counsel failed to consult with him before questioning witnesses, nor is there any showing that counsel's failure to consult with Appellant rendered his performance deficient. Appellant's complaint that trial counsel failed to call numerous witnesses who could have testified about the victim's reputation for lying and Appellant's history of telling the truth is also groundless. It is well settled that, "[a]ttorneys need not pursue every conceivable avenue; they are entitled to be selective." State v. Murphy
(2001), 91 Ohio St.3d 515, 520; quoting United States v. Davenport
(C.A.7, 1993), 986 F.2d 1047, 1049. While trial counsel's chosen strategy may not have been perfect, the record demonstrates that it was not prejudicially deficient or incompetent.
Appellant's claim that trial counsel was not properly prepared for trial is unsupported by the record. Trial counsel vigorously represented Appellant. Counsel challenged the victim's competency and sought to bar the introduction of certain evidence. Counsel effectively cross-examined the prosecution witnesses and highlighted for the jury numerous inconsistencies in their various accounts. Counsel was well-versed in the facts surrounding this prosecution. Absent any authority or factual basis for Appellant's claim that trial counsel's representation fell below an objective standard of competence, this Court cannot grant the relief he seeks. Appellant's second assignment of error is overruled.
In his third assignment of error, Appellant maintains that,
 "THE TRIAL COURT ABUSED ITS DISCRETION BY FINDING THE CHILD-WITNESS COMPETENT TO TESTIFY."
Appellant here maintains that under Evid.R. 601(A), the victim was not competent to testify about any incidents of sexual abuse that allegedly occurred when victim was under the age of ten. This assignment of error fails because the record in this case abundantly supports the trial court's findings in this matter.
In all cases, it is the trier of fact which determines whether a witness is competent to testify. State v. Wilson (1952), 156 Ohio St. 525. The trial court's competency determination will not be disturbed on appeal absent an abuse of discretion. State v. Frazier,61 Ohio St.3d at 251, 574. An abuse of discretion in this context connotes more than an error of law or of judgment, implying instead that the court's attitude is unreasonable, arbitrary or unconscionable. State v. Moreland (1990),50 Ohio St.3d 58, 61, 552 N.E.2d 894, 898. Under Evid.R. 601(A), two groups of people are deemed incompetent to testify: persons who are not mentally sound and children under the age of ten, ". . . who appear incapable of receiving just impressions of the facts and transactions respecting which they are examined, or of relating them truly." This evidentiary rule presumes the competence of children who are over the age of ten at the time they testify. In State v. Clark (1994),71 Ohio St.3d 466, the Supreme Court held that the trial court had no obligation to, "voir dire a witness on the question of competency when the witness is ten years or older at the time of trial, but was under ten years at the time of the events, giving rise to the witness's testimony."Id. at 468 (emphasis added).
The victim in this case was fourteen when she testified. This testimony concerned abuse she experienced between the ages of eight and twelve. After a hearing where Appellant chose to present no rebuttal evidence, the trial court found,
"I was able to observe her demeanor, as well as the content of her answers, that her ability to recollect is accurate, her ability to relate what she recollects is accurate — would be accurate and that her — her testimony would be trustworthy and therefore the Court rules that she is a competent witness for the purpose of this trial." (2/14/00 Hearing Tr. p. 14).
Given this finding, the record supports the trial court's conclusion that the victim was competent to testify about the sexual abuse. Appellant's third assignment of error is without merit.
In his fourth assignment of error Appellant maintains:
 "THE TRIAL COURT ERRED WHEN IT EXCLUDED THE APPELLANT-DEFENDANT FROM THE COMPETENCY HEARING OF THE CHILD WITNESS."
Appellant challenges the trial court's decision to bar him from attending the competency hearing. Appellant argues that because he was not allowed to attend, trial counsel was unable to determine the accuracy of the victim's answers to the questions the court asked of her. Appellant maintains that had he been present at the hearing, he could have brought any inaccuracies in the victim's testimony to the attention of counsel who then could have highlighted them for the court.
While an accused has a fundamental right to be present at all stages of his criminal trial, that right is not absolute. Section 10, Article I, Ohio Constitution; Crim.R. 43(A). State v. Green (2000), 90 Ohio St.3d 353,372. A violation of this principle will only result in reversal of a defendant's conviction where a fair and just proceeding was thwarted because of the defendant's absence. State v. White (1998), 82 Ohio St.3d 16. In Green, supra, the Supreme Court explicitly held that a, "defendant's absence from a witness competency hearing is not a fatal error." Green,
at 371, quoting Kentucky v. Stincer (1987), 482 U.S. 730, 736-744.
The trial court in the instant case barred both of the victim's parents from the hearing after it concluded that the victim might be distracted by, "* * * her consideration as to what her mother may think of her testimony, what her father may think of her testimony." (2/14/00 Hearing Tr. p. 4).
Notwithstanding Appellant's absence, the record demonstrates that the competency hearing was conducted fairly. Although the court, and not the parties, questioned the victim, it did so using questions that they submitted. (2/14/00 Hearing Tr. p. 4). Accordingly, Appellant was able to provide the correct answers to any of the questions the trial court asked of the victim to trial counsel in advance of the hearing. Appellant's counsel was present at the hearing and given the opportunity to participate on his client's behalf. The record demonstrates that Appellant's absence from the hearing did not undermine the fairness of the proceeding.
In his fifth and final assignment of error, Appellant maintains,
 "THE JURY'S FINDING OF GUILT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
Appellant here urges that the state failed to prove guilt beyond a reasonable doubt. Essentially, Appellant maintains that the victim was not credible and that the jury should have believed his testimony over that of the victim.
A challenge to the weight of the evidence presumes that the state's evidence was legally sufficient to support a conviction. State v.Thompkins (1997), 78 Ohio St.3d 380, 388. In Thompkins, the Supreme Court noted that even when a reviewing court concludes that the judgment below was supported by sufficient evidence, it is nevertheless entitled to consider whether the judgment is against the weight of the evidence. Id. at 387.
A determination of the manifest weight of the evidence concerns the inclination of the greater amount of credible evidence offered at trial to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict if on weighing the evidence in their minds, they find the greater amount of credible evidence sustains the issue which is to be established before them. State v. Layne (March 1, 2000), Mahoning App. No. 97 CA 172, unreported, citing Thompkins, supra at 387, quoting Black's Law Dictionary, 1594.
This Court will reverse and remand a conviction as against the manifest weight of the evidence only to prevent a miscarriage of justice. Such authority is properly exercised only in rare and exceptional case where the evidence weighs heavily against the conviction and seems to indicate that the jury lost its way. Thompkins, supra at 387. We will not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all the essential elements of the offense have been proven beyond a reasonable doubt. State v. Baker (1993),92 Ohio App.3d 516, 538, citing State v. Jenks (1991), 61 Ohio St.3d 259.
In undertaking such a review, this Court is also aware that it is the trier of fact, in this case the jury, which properly determines witness credibility. State v. Hill (1996), 75 Ohio St.3d 195, 205, citing Statev. DeHass (1967), 10 Ohio St.2d 230, 231. The jury views the witnesses and observes their demeanor, gestures and voice inflections. Those observations are critical to a determination of each witnesses' credibility. State v. Scott (March 9, 1998), Mahoning App. No. 95 C.A. 140 (unreported), citing State v. Antill (1964), 176 Ohio St. 61; andBaker, supra at 538. That opportunity is not available to the reviewing court, which must decide a case based on a "cold" transcript of the testimony.
Appellant complains that the victim's accounts of the abuse were inconsistent. He claims that her testimony about the time and frequency of the abuse was rebutted by evidence indicating that Appellant was not at home at the times when the victim claims that the abuse occurred. This Court recognizes that the victim's testimony was inconsistent in some respects. Nevertheless, those slight inconsistencies were hardly material given the overall coherence of the victim's account. Moreover, contrary to Appellant's contentions, this matter is not based on simply Appellant's word against the victim's.
Appellant was convicted of four counts of rape as described under R.C. § 2907.02(A)(1)(b), which bars sexual conduct where one of the participants is less than thirteen years of age. The record reflects that the sexual conduct or abuse in this case began in 1993, when the victim was between eight and nine years old. The victim did not disclose the abuse until December of 1998. It is hardly surprising that the victim would have difficulty recalling some of the details surrounding the incidents and their frequency.
According to Dr. Exley, victims of sexual abuse may remember different details at different points in time as their memory of it returns. (Trial Tr. p. 312). Dr. Exley further noted that, "the longer someone is being questioned the more connections in their brains are getting stimulated, in other words, the more that their memory is getting jogged so that they can recall different things." (Trial Tr. p. 312). Given its guilty verdict, the jury obviously found that Dr. Exley's explanation for the victim's discrepancies made sense.
The victim's account is corroborated in some respects by other witnesses. In particular, this Court notes that the victim's allegations that she and a neighbor girl modeled lingerie for Appellant on several occasions late at night in the family's garage were confirmed not only by the girl but also by the victim's mother. The victim's mother testified that late one night she awoke and, after finding that the girls were not in their beds, followed noises down to the garage where she found the door locked and the windows covered. (Trial Tr. pp. 371-372). After knocking on the door for several minutes, the door was opened and victim's mother saw the victim, the neighbor and Appellant standing near a portable heater with their jackets on. (Trial Tr. p. 373). The victim's mother testified that later she found a bag of old nightgowns in the victim's bedroom. (Trial Tr. p. 373). The jury may have concluded that this testimony, which partially corroborates some of the victim's account, lent credibility to the victim's allegations overall.
The jury in this case heard the victim's testimony as well as that provided by all of the other witnesses. Appellant took thorough advantage of the opportunity to cross-examine the state's witnesses. In so doing, Appellant managed to offer a potential motive for the victim and her mother to fabricate the allegations of abuse. Appellant was able to highlight the victim's credibility problems. The jury heard Appellant and witnesses on his behalf testify that the allegations were false. Ultimately, the jury chose to believe the victim. It is not this Court's role to disturb that decision. Since that decision was not contrary to the manifest weight of the evidence this Court will not disturb the jury's verdict. Accordingly, the judgment of the trial court is hereby affirmed.
Donofrio, J., concurs.
Vukovich, P.J., concurs.