OPINION
{¶ 1} This matter presents a timely appeal from a judgment of the Jefferson County Court of Common Pleas entered after a jury convicted Raphael Butler ("Appellant") of burglary and two counts of aggravated robbery. Appellant raises five assignments of error on appeal. He challenges the admission of evidence he mischaracterizes as co-conspirator testimony. Appellant contests the legal sufficiency and manifest weight of the evidence presented against him at trial. Finally, he challenges the trial court's decision to impose maximum and consecutive sentences. Based on the record herein, we affirm the trial court's decision in all respects.
 {¶ 2} On March 9, 2001, police arrested Delwon Whatley in connection with an armed robbery and kidnapping that occurred at a Steubenville gas station earlier in the evening. For some time, police suspected that Whatley also participated in an armed robbery and break-in that occurred on August 12, 2000. In the August incident, one of the victims said that Whatley shot him with a small caliber handgun.
 {¶ 3} During the interrogation that followed Whatley's arrest, he admitted his participation in both crimes and agreed to cooperate with the police in their investigation of the other individuals involved. As part of that cooperation, Whatley implicated Appellant and Appellant's brother, John Viers, in the August 12, 2000, incident. Whatley pleaded guilty to an array of felony offenses in connection with the two incidents and, in exchange for his truthful testimony against Appellant and others involved in the respective incidents, received a substantially reduced sentence of seven years of imprisonment. (Dec.11, 2001, Trial Tr., pp. 103, 120-121, 160-161, 177).
 {¶ 4} With respect to the August 12, 2000, incident, Delwon Whatley served as the primary prosecution witness. Whatley testified that he told police he had ingested alcohol, cocaine and marijuana on that night. At some point he met up with Appellant, with whom he shared a social acquaintance. The two discussed the prospect of obtaining more drugs or at least locating money to purchase more drugs. According to Whatley, Appellant suggested that they might find both drugs and money at a house that his father owned on 411 Highland Avenue in Steubenville. It was rumored that the people living there sold drugs, and neither Whatley nor Appellant expected them to be home. (Dec. 11, 2001, Trial Tr., pp. 164, 170-171, 183). Along with Appellant's brother, they formulated a plan to break into the apparently empty house and steal whatever drugs or money they could find. While no one was expected to be at home, Appellant gave Whatley a handgun to take with him because, as Whatley stated at trial, "it's better to be safe than sorry." (Dec. 11, 2001, Trial Tr., p. 176).
 {¶ 5} Whatley recounted that the three arrived at the house in the very early hours of the morning. Appellant helped boost Whatley into the house through a broken window on the building's first floor. (Dec. 11, 2001, Trial Tr., p. 161). As he did so, Appellant cut himself on a shard of glass. (Dec. 11, 2001, Trial Tr., p. 162). Police later found several drops of fresh blood on the downstairs windowsill from which they were able to secure samples suitable for DNA comparison that investigators eventually used to link Appellant to the scene. (Dec. 11, 2001, Trial Tr., pp. 98, 203-205).
 {¶ 6} Whatley then let the others inside through a downstairs entrance and the three began to search the first floor. Whatley testified that Appellant tore the phone cord out of the wall and bit it in two, evidently so that no one could use the telephone to call for help. (Dec. 11, 2001, Trial Tr., p. 164). Unable to find the drugs or money they sought, Whatley moved to the second floor followed by John Viers. The record does not indicate where Appellant was at this point. It does not appear, though, that Appellant followed Whatley and Viers upstairs.
 {¶ 7} Whatley continued searching the house, admitting that he entered an upstairs bedroom where Joseph Barker and Josea Brown lay sleeping. Whatley saw money on the floor. He picked it up and smashed the room's overhead light with his handgun. Pointing the weapon at the newly awakened couple, Whatley shouted, "give it up," or "where's it at?" (Dec. 11, 2001, Trial Tr., p. 165). Without warning, Joseph Barker threw himself at Whatley and tried to wrestle the gun from him. The struggle over the weapon moved into the hallway. Whatley testified that as he pulled his arm away, the gun accidentally fired and a small caliber bullet passed completely through Barker's right upper arm. (Dec. 11, 2001, Trial Tr., p. 89, 165). Whatley and Viers fled downstairs. Locating Appellant on their way out, the three left the scene in Appellant's borrowed car.
 {¶ 8} Police arrived a short time later. During an interview with the first officer to reach the house, Barker did not initially acknowledge that he knew the intruders, while Brown, who was familiar with Whatley, identified him as Barker's shooter. (Dec. 11, 2001, Trial Tr., p. 218). Barker and Brown reported that the only item the intruders stole was a set of car keys belonging to Brown's father. The car itself was not taken. Initially, neither victim could identify the other men who entered their house that morning, but later testified that they recognized John Viers as the other intruder in their bedroom with Whatley. (Dec. 11, 2001, Trial Tr., pp. 135, 139, 149-150). Neither witness saw Appellant.
 {¶ 9} Based largely on Whatley's story, police eventually arrested and charged Appellant for his participation in the August 12, 2000, incident. In an indictment issued on June 6, 2001, Appellant was charged with burglary and two counts of aggravated robbery, each charge carrying its own firearm specification. Appellant was also charged under R.C.2909.04(A)(3) for the destruction of property with intent to impair the ability of law enforcement and emergency personnel to function in their professional or emergency capacities.
 {¶ 10} A jury convicted Appellant of burglary pursuant to R.C.2911.12(A)(1); two counts of aggravated robbery in violation of R.C.2911.01(A)(1), as well as specifications for brandishing a firearm relating to each offense. Appellant was acquitted on the charge brought pursuant to R.C. 2909.04(A)(3).
 {¶ 11} On December 12, 2001, the trial court imposed an aggregate sentence of fifteen years of imprisonment. The court sentenced Appellant to eight years for burglary. The court merged the two armed robbery counts into concurrent four year terms, but ordered that Appellant serve that term consecutively to the burglary sentence imposed. The court merged the three firearm specifications into one, for which it imposed an additional consecutive term of three years. (Sentencing Tr., pp. 21-23). On December 17, 2001, Appellant filed a Notice of Appeal.
 {¶ 12} In his first assignment of error, Appellant contends that,
 {¶ 13} "The trial court erred in admitting co-conspirator's testimony, where there is no independent corroboration."
 {¶ 14} Appellant argues that Whatley's "self-serving" testimony was inadmissible because the prosecution failed to present foundational support for, or corroboration of, that testimony. Since Appellant never sought to bar the prosecution from introducing Whatley's testimony and raises this issue for the first time on appeal, he has waived it. Even if this Court were to reach the merits of this assignment, it must fail based on the law.
 {¶ 15} This Court typically reviews the trial court's evidentiary rulings using an abuse of discretion standard. We will not disturb such rulings absent a showing that the trial court both abused its discretion and this abuse caused material prejudice to the defendant. State v.Martin (1985), 19 Ohio St.3d 122, 129, 483 N.E.2d 1157. Because no one objected to Whatley's testimony at the time, we must review the issue only for plain error. Crim.R. 52(B). Plain error is one that is obvious and prejudicial to an accused, although neither objected to nor affirmatively waived. It is the kind of error, which, if allowed to stand, would have a substantial adverse impact on the integrity of, and public confidence in, judicial proceedings. State v. Craft (1977),52 Ohio App.2d 1, 7, 367 N.E.2d 1221.
 {¶ 16} In proposing this assignment of error, Appellant mislabels Whatley's testimony. Appellant refers to this testimony in the nature of a declaration of a co-conspirator and treats its admission as if it was impacted by the hearsay rule. Under Evid.R. 801(D)(2)(e), a statement of a co-conspirator made during the course and in furtherance of the conspiracy is not hearsay when it is offered against a party. While obviously Whatley was a co-conspirator in the crime that occurred on August 12, 2000, his trial testimony about the incident was not hearsay. Consequently, the rule has no application whatsoever to the instant case.
 {¶ 17} Appellant appears to be arguing here that because Whatley participated in the crime, the trial court was required, sua sponte, to bar the prosecution from calling him as a witness in the absence of evidence which corroborated that testimony. This proposition misstates the applicable law. Prior to 1986, R.C. 2923.03(D) did bar a conviction for complicity based solely upon the testimony of an accomplice, unsupported by other evidence. R.C. § 2923.03(D) has since been amended, however, and no longer requires corroborative evidence in order to introduce an accomplice's testimony. State v. Holdsworth (Feb. 21, 1992), 11th Dist. No. 90-P-2231; see, also, State v. Ecomomo (1996),76 Ohio St.3d 56, 58, 666 N.E.2d 225 (fn6 — referring to the repeal of R.C. § 2923.03(D)).
 {¶ 18} Currently, rather than requiring the prosecution to present corroborative evidence of an accomplice's testimony, R.C. 2923.03(D) requires the trial court to instruct the jury that it treat the accomplice witness' testimony with suspicion and weigh it with caution. The record reflects that in cooperating with the prosecution against Appellant, Whatley had an incentive to provide information that enhanced or highlighted the involvement of others. As Whatley candidly acknowledged on direct examination:
 {¶ 19} "This ain't nothing I want to do, you know. I like Raphael. It's just the circumstances that we in, you know, I got — I got — I got — I got children out there. I just had a son in January, you know, and when I — when I come home if I do these whole seven years, he ain't going to even know me, you know, and I'm trying to get back out there to know him by any means necessary . . ." (Dec. 11, 2001, Trial Tr., p. 168).
 {¶ 20} Whatley's admission highlights the importance of treating such witnesses with a degree of skepticism. The trial court properly cautioned the jury that Whatley's, "complicity, moral turpitude or self interest . . . may affect his credibility and may make his testimony subject to grave suspicion and require that it be weighed with great caution." (Dec. 11, 2001, Trial Tr., p. 248).
 {¶ 21} This language accurately reflects that, with such competing interests, the credibility of cooperating witnesses may be compromised. See, generally, State v. Larew (Nov. 29, 2000), 7th Dist. No. 98-C.A.-168. As Appellant noted in his brief, given the amount of jail time Whatley faced, he may have been willing to perjure himself in exchange for a reduced prison term. While this may be true, the record reflects that the jury received ample information about Whatley's criminal background and the circumstances that prompted his decision to cooperate. Notwithstanding Whatley's credibility problems, the jury concluded that his account was believable after these problems were fully disclosed. It was not error to admit Whatley's testimony on this basis and this assignment is, therefore, overruled.
 {¶ 22} In his second and third assignments of error, Appellant maintains as follows:
 {¶ 23} "Evidence adduced at trial was insufficient as a matter of law to convict appellant."
 {¶ 24} "The jury verdict is against the manifest weight of the evidence."
 {¶ 25} Appellant here challenges the weight and sufficiency of the evidence against him. Neither challenge warrants reversal based on the record before us.
 {¶ 26} In State v. Thompkins (1997), 78 Ohio St.3d 380,678 N.E.2d 541, the Ohio Supreme Court distinguished between the legal sufficiency of evidence and its attendant weight. Sufficiency, "is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." Id. at 386, quoting Black's Law Dictionary (6 Ed. 1990) 1433, and Crim.R. 29(A) "In essence, sufficiency is a test of adequacy. Whether the evidence is legally sufficient to sustain a verdict is a question of law." Id., citing Statev. Robinson (1955), 162 Ohio St. 486, 124 N.E.2d 148.
 {¶ 27} When determining the sufficiency of the evidence at trial, this Court reviews all probative evidence and the reasonable inferences to be drawn from them in a light most favorable to the prosecution. The Court then ascertains whether any rational trier of fact could have found all the elements of the crime charged proven beyond a reasonable doubt.State v. Reed (1988), 128 Ohio App.3d 520, 522, 715 N.E.2d 617.
 {¶ 28} Appellant was convicted of burglary and two counts of aggravated robbery. To prove the crime of burglary as contemplated under R.C. § 2911.12(A)(1), the prosecution must essentially demonstrate that by means of force, stealth or deception the accused trespassed in an occupied structure intending to commit a criminal offense. State v.Kalejs, 1st Dist. Nos. C-668, C-10627, C-663 and C-100644,2002-Ohio-6657, P24 (reversed on other grounds). A conviction for aggravated robbery in violation of R.C. 2911.01(A)(1), must be supported by evidence showing that the accused displayed, brandished or otherwise used a deadly weapon in committing or attempting to commit a theft offense. State v. Easterly (Aug. 27, 1997), 7th Dist. No. 94 C.A. 41.
 {¶ 29} The record reflects that the prosecution introduced evidence to support every element of the offenses in question. Whatley testified that although Appellant was not with him when Whatley pointed a gun at Josea Brown and Joseph Barker and demanded that they "give it up," it was Appellant's idea to break into the house in the first place. Appellant provided the weapon that Whatley brandished and helped Whatley break into the house through the downstairs window. Under R.C. 2923.03(F), an individual who aids or abets another in committing the offense, "shall be prosecuted as if he were a principal offender." See, also, State v.Mendoza (2000), 137 Ohio App.3d 336, 738 N.E.2d 822 (exploring in detail the limits of accomplice liability). Since the evidence reflects that Appellant aided Whatley in this criminal endeavor, the evidence is sufficient to sustain his conviction.
 {¶ 30} Appellant also contests the weight of the evidence against him. Based on the record herein, this challenge fails as well. While certainly the evidence of guilt in this case cannot be characterized as overwhelming, this Court would be hard-pressed to say that the jury "lost its way" in reaching its guilty verdict.
 {¶ 31} A challenge to the weight of the evidence presumes that the State's evidence was legally sufficient to support a conviction.Thompkins, supra, at 388. In Thompkins, the Court noted that even when a reviewing court concludes that the judgment below was supported by sufficient evidence, it is nevertheless entitled to consider whether the judgment is against the weight of the evidence. Id. at 387.
 {¶ 32} As this Court has noted in the past, a determination of the manifest weight of the evidence concerns the inclination of the greater amount of credible evidence offered at trial to support one side of the issue rather than the other. It indicates clearly to the jurors that the party having the burden of proof will be entitled to a verdict if, on weighing the evidence, they find the greater amount of credible evidence sustains the issue to be established. State v. Layne (March 1, 2000), 7th Dist. No. 97CA 172, citing Thompkins, supra at 387.
 {¶ 33} The discretionary authority to reverse a conviction as contrary to the manifest weight of the evidence is properly exercised only in the rare and exceptional case where the evidence weighs heavily against the conviction. The record must demonstrate that the jury clearly lost its way, resulting in a miscarriage of justice. Thompkins, supra at 387. A reviewing court will not reverse a jury verdict where there is substantial evidence upon which a jury could reasonably conclude that all the essential elements of the offense have been proven beyond a reasonable doubt. State v. Baker (1993), 92 Ohio App.3d 516, 538,636 N.E.2d 363, citing State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492.
 {¶ 34} Appellant predicates his weight of the evidence challenge on Delwon Whatley's dubious credibility as well as inconsistent accounts offered by the victims. In this argument, however, Appellant overlooks the fact that credibility determinations are in the exclusive province of the jury. State v. Hill (1996), 75 Ohio St.3d 195, 205, 661 N.E.2d 1068; and State v. Barnes (2002), 7th Dist. No. 00 BA 44, 2002-Ohio-1158.
 {¶ 35} It is true that the victims of the incident in question gave somewhat different versions about what happened that night. There is also little dispute that Whatley possessed a motivation to implicate Appellant and others in this crime. Collectively, though, the witnesses' accounts, viewed in conjunction with the corroborative evidence, were not wholly unworthy of belief. Appellant minimizes the fact that his blood was found at the scene of the crime. Such evidence, found at precisely the location where Whatley told police Appellant had been cut, lends credibility to Whatley's testimony. (Dec. 11, 2001, Trial Tr., pp. 98, 163). Appellant is also linked to the crime and the scene circumstantially because his father owned the building.
 {¶ 36} The jury is in the best position to view the witnesses and observe their demeanor, gestures and voice inflections. Those observations are critical to any decision reached with respect to a given witness' credibility. State v. Scott (Mar. 9, 1998), 7th Dist. No. 95 C.A. 140. A jury may believe all, part, or none of a witness' testimony.Baker, supra at para. 25 of the syllabus. Evidently, the jury found the witnesses' accounts to be sufficiently believable to justify convicting Appellant for his role in the offense. That decision was not erroneous and this assignment of error is overruled.
 {¶ 37} Appellant's fourth assignment of error maintains that,
 {¶ 38} "The trial court erred in enhancing appellant's sentence to a maximum term without following the law."
 {¶ 39} The facts of this case justify the trial court's decision to impose a maximum sentence of eight years of imprisonment. The record establishes that when the trial court imposed the maximum sentence, it provided findings that comported in every respect with the requirements of the felony sentencing guidelines. Under R.C. 2953.08(G) this Court reviews a sentence to determine whether it is supported by the record. We will reverse a sentence only if it is unsupported by clear and convincing evidence or it is otherwise contrary to law. State v. Roth (May 14, 1999), 7th Dist. No. 97-BA-58.
 {¶ 40} The overriding purposes of felony sentencing are to punish the offender and protect the public from future crime. R.C. 2929.11(A). Accordingly, the trial court's sentencing determination is driven by two concerns, the seriousness of the crime and the likelihood that the offender will commit further crimes. R.C. 2929.12(A); Roth, supra. R.C.2929.14(C) allows the trial court to impose a maximum sentence where it finds that the matter falls into any one of four categories: (1) the crime is one of the worst forms of the offense; (2) the defendant poses the greatest likelihood of committing future crimes; (3) the defendant is a major drug offender; or (4) the defendant is a repeat violent offender.
 {¶ 41} When the trial court decides that a maximum sentence is appropriate, it must expressly state that the offender satisfies one of the criteria listed under R.C. § 2929.14(C). The court must then include valid, fact-based reasons to support that decision in accordance with R.C. 2929.19(B)(2)(d). State v. Edmonson, 86 Ohio St.3d 324,715 N.E.2d 131; and State v. Johnson (Nov. 29, 2002), 11th Dist. No 2001-A-43, 2002-Ohio-6570.
 {¶ 42} In articulating findings that support a maximum sentence, the trial court need not parrot the exact words used in the statute for that sentence to conform to the sentencing guidelines. State v. Ruby
(2002), 149 Ohio App.3d 541, 778 N.E.2d 101, ¶ 75. Nevertheless, a record that does not clearly demonstrate that the court made the requisite finding pursuant to R.C. 2929.14(C) will not suffice. State v.Gist, 7th Dist. No. 99-CO-34, 2002-Ohio-5241.
 {¶ 43} In determining whether the trial court articulated the necessary findings and supporting reasons, this Court may rely on the court's remarks at the sentencing hearing as well as any findings contained in the subsequent judgment entry. See State v. Rogers, 7th Dist. No. 01CO5, 2002-Ohio-1150, ¶ 16; State v. Jackson (April 20, 2001), 11th Dist. No. 99-L-134; State v. Monroe (May 8, 2001), 10th Dist. No. 00AP752; and Edmonson, supra at 327-328 (where the Ohio Supreme Court evaluated the validity of a maximum sentence based on the contents of both the transcript and the journal entry).
 {¶ 44} The record of proceedings in the instant case reveals that in sentencing Appellant on the burglary charge, the trial court concluded Appellant had committed the worst form of the offense. In so finding, the court noted the, "undisputed testimony was that it was this Defendant that planned the burglary and also this Defendant who supplied the gun." (December 12, 2001, Sentencing Tr., p. 5). In its judgment entry memorializing Appellant's sentence, the court supplemented the transcript findings by noting that, "the burglary constitutes the worst form of the offense of Burglary primarily because of the presence and use of the firearm and the gunshot injury to the victim."
 {¶ 45} The trial court went on to state the following:
 {¶ 46} "Defendant has not responded to prior Community Control sanctions. Defendant has been placed on Community Control twice by the Common Pleas Court. He has violated Community Control in one case and committed these offenses while on Community Control in Case 99-CR-204. The minimum sentence would demean the seriousness of these offenses and would fail to protect the public from further crime of this Defendant . . . This Defendant poses the greatest likelihood of recidivism in light of his prior criminal conduct and the fact that this offense was committed while on Community Control." (Dec. 13, 2001, Judgment Entry, p. 3).
 {¶ 47} The trial court then imposed the maximum sentence for burglary based on its conclusion that Appellant committed the worst form of the offense, as well as the fact that Appellant poses the greatest likelihood of recidivism. Both factors are legitimate.
 {¶ 48} Appellant, however, insists that the crime that occurred here was not the worst form of the offense. Appellant casually dismisses the injury that the victim sustained, calling it a "flesh wound." To the contrary, the record reflects that this so called "flesh wound" was in fact a bullet hole which passed completely through the victim's upper arm. (Dec. 11, 2001, Trial Tr., pp. 88-90). Next, Appellant advances the following:
 {¶ 49} "No evidence was presented that the victim suffered serious physical harm or emotional harm. Although the victim did not deserve to have the injury inflicted upon him, the victim was convicted of felony crack cocaine charges, and he served prison time for drug offenses. The victim was obviously involved in the drug trade and accustomed to the dangers that go along with his lifestyle. Joseph Barker was not affected by this crime in the same manner in which a suburban factory worker would be affected; rather, this is the lifestyle in which he exists." (Appellant's Brf. p. 18).
 {¶ 50} The record does not support such observations. Though implied by counsel throughout the trial, there was little evidence to support speculation that Barker and Brown were dealing drugs. Barker and Brown denied that they sold or used drugs. (Dec. 11, 2001, Trial Tr., pp. 141, 155). Whatley testified that he searched the house and found no drugs. Police, who were in and around the house within minutes of the break-in, apparently suspected nothing in this regard.
 {¶ 51} Appellant's claims notwithstanding, this case presented the court with a factual situation the judge clearly found to be outrageous. The three perpetrators chose to invade someone's home in the early morning hours, a time when occupants are typically asleep and obviously vulnerable. When Whatley entered the house he was armed with a gun Appellant had provided him. Whatley scoured the entire house looking for money and drugs, finally ending up in the victims' bedroom. Whatley brandished the weapon, threatening the victims, then managed — albeit accidentally — to shoot one of them before grabbing some cash and escaping. It is surprising that one of these victims was not slain in the process. This scenario justifies the trial court's decision to impose on Appellant eight years of imprisonment for burglary.
 {¶ 52} Appellant's criminal history provides additional support for the imposition of a maximum term. The court found that Appellant had received community control sanctions on two previous occasions and violated them each time. In light of this prior criminal conduct and the conclusion that Appellant demonstrated no remorse for his actions, the court found that he presented the highest risk of recidivism. (Dec. 12, 2001, Judgment Entry, p. 3, ¶¶ 8-9). Such conclusions are supported by the record.
 {¶ 53} Appellant complains that the court violated his right to due process by enhancing his sentence without first ordering a presentence investigation report. Appellant is mistaken in this regard. R.C. 2951.03 requires the trial court to order a presentence investigation report only before a defendant can receive a community control sanction. R.C. 2951.03(A)(1). Since Appellant faced mandatory incarceration in this case, community control was not an option. Therefore, a presentence investigation and report were not required.
 {¶ 54} During oral argument Appellant stressed that it was improper for the trial court to rely on his criminal background in maximizing his sentence for burglary when no presentence investigation report was ordered. Appellant maintains that he could not refute the trial court's recitation of his criminal history because he was not provided the information at the time of sentencing. Appellant is correct that, in addition to the seriousness of the offense, the trial court relied on Appellant's criminal history when it concluded that a maximum term was warranted.
 {¶ 55} The court found that,
 {¶ 56} "[h]e only has one felony but he's got tons and tons of misdemeanors, some of which are violent but the only misdemeanor he had here was that stolen property one and he got revoked on his probation. So we've got in — in the Common Pleas Court he's got a felony and then in another case a misdemeanor where probation was revoked down in Municipal Court. He's got a number of other things." (Dec. 12, 2001, Sentencing Tr., pp. 6-7).
 {¶ 57} Appellant is also correct in observing that he did not challenge the court's findings with respect to his criminal history. While neither the prosecution nor the trial judge took any steps to officially introduce Appellant's criminal history into the record at sentencing, Appellant's claim that he had no opportunity to review his history at the time of sentencing is false. According to the record, the prosecution submitted numerous documents reflecting Appellant's criminal history in a supplemental answer to discovery filed on November 15, 2001, well in advance of trial and sentencing. Accordingly, Appellant had ample opportunity to rebut, explain, or otherwise address this information. Since Appellant offered no challenge whatsoever to the information noted by the court at sentencing, we must assume that it was accurate.
 {¶ 58} In any event, the trial court in this case also concluded that this burglary constituted the worst form of the offense, because one of the victims had been shot. Consequently, even if we were to conclude that the trial court erroneously considered Appellant's criminal history, the trial court's findings and supporting reasons still justify a maximum sentence under R.C. 2929.14(C).
 {¶ 59} Appellant also complains that his sentence violates due process because the judgment entry is inconsistent with the trial court's findings at sentencing. Again, we disagree with his conclusions. A comparison of the trial court's written findings with those enunciated at the sentencing hearing demonstrate that, while not identical, these can hardly be characterized as inconsistent. The record demonstrates that the nature of the crime and Appellant's criminal history support the trial court's decision to impose a maximum sentence for burglary. Appellant's fourth assignment of error is overruled.
 {¶ 60} In his fifth and final assignment of error, Appellant contends as follows:
 {¶ 61} "The trial court erred in sentencing the appellant on gun specification where there is no evidence except the testimony of the principal"
 {¶ 62} This assignment attacks the legal sufficiency of the evidence supporting the firearm specification. As this Court noted when we addressed Appellant's previous sufficiency argument, when determining the sufficiency of the evidence, we review all probative evidence and the reasonable inferences to be drawn from them in a light most favorable to the prosecution. In that light, the court then ascertains whether any rational trier of fact could have found all the elements of the crime charged were proven beyond a reasonable doubt. Reed, supra at 522.
 {¶ 63} Under R.C. 2941.145, the trial court must impose a three year prison term upon an offender who, in addition to the offense charged, was also found to have, "a firearm on or about [his] person or under [his] control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."
 {¶ 64} Appellant contends that there was insufficient evidence to support his conviction for the gun specification. According to Appellant, there was no evidence that he was in the house at the time Whatley used the gun, there was no evidence (beyond Whatley's testimony) that Appellant provided the gun, and police never found a gun linking him to the August 12, 2000, incident. Appellant concludes that since there was no evidence that he possessed a firearm, the mandatory three-year term thereon ought to be vacated.
 {¶ 65} Based on the record, Appellant is incorrect in his arguments. Whatley's testimony that Appellant gave him a gun is corroborated by the testimony of the victims who saw him use the gun. As an accomplice to the offense, Appellant is liable as if he were the principal. R.C. 2923.03(F). Accordingly, Appellant's fifth assignment of error is overruled.
 {¶ 66} Having concluded that all of Appellant's assignments of error lack merit, we hereby affirm the judgment entered by the Jefferson County Court of Common Pleas in its entirety.
Judgment affirmed.
Vukovich and DeGenaro, JJ., concur.