[Cite as *State v. Shabazz*, 2011-Ohio-2260.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 95021**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## KAREEM SHABAZZ

DEFENDANT-APPELLANT

---

**JUDGMENT:**
AFFIRMED

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-532608

**BEFORE:**   Blackmon, P.J., Celebrezze, J., and E. Gallagher, J.

**RELEASED AND JOURNALIZED:**   May 12, 2011

**ATTORNEY FOR APPELLANT**

Stephen L. Miles
20800 Center Ridge Road
Suite 405
Rocky River, Ohio 44116


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor

Jeffrey S. Schnatter
Brad S. Meyer
Assistant Prosecuting Attorneys
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113



PATRICIA ANN BLACKMON, P.J.:

**{¶ 1}** Appellant Kareem Shabazz appeals the trial court's denial of his motion to dismiss and his subsequent convictions. Shabazz assigns the following errors for our review:

> **"I. The trial court erred by denying the appellant's motion to dismiss because his right to a speedy trial was violated."**
>
> **"II. Appellant's convictions were against the manifest weight of the evidence."**

**{¶ 2}** Having reviewed the record and pertinent law, we affirm the trial court's decision and Shabazz's convictions.   The apposite facts follow.

**{¶ 3}** On December 30, 2009, as a result of a burglary at a home in Maple Heights, Ohio and a robbery[1] of a Dollar General store in the same city, a Cuyahoga County Grand Jury issued a multi-count indictment against Shabazz and his codefendant, David Merritt.   The grand jury indicted Shabazz on six counts of kidnapping, two counts of aggravated robbery, four counts of felonious assault, and two counts of receiving stolen property.   The foregoing charges had one and three-year firearm specifications attached.

**{¶ 4}** The grand jury also indicted Shabazz on one count of having weapons while under disability. Shabazz pleaded not guilty at his arraignment and numerous pretrials and continuances followed.   On February 22, 2010, Shabazz waived his right to a jury trial on the charge of having weapons while under disability.   The state dismissed the four counts of felonious assault.   On March 15, 2010, a jury trial commenced on the remaining charges; the next day, the trial court denied Shabazz's motion to dismiss for speedy trial violation.

## Jury Trial

---

[1]The jury subsequently found Shabazz not guilty of all the charges relating to the robbery of the Dollar General store; thus, this opinion will contain only a limited discussion of the testimony relating to the robbery.

{¶ 5} At trial, the state presented the testimony of 16 witnesses including Kenneth Dostie, who testified that on April 21, 2009, his home in Maple Heights, Ohio was burglarized. Dostie also testified that the burglary must have taken place between the hours of 7:30 AM and 3:00 PM, while his daughter was at school. Dostie stated that numerous items were taken from the house including, but not limited to, a red 1995 Ford Mustang automobile, rare gold and silver coins, handcuffs, several watches, a television set, and a black Harley Davidson leather jacket.

{¶ 6} In addition, the burglar took a prescription bottle containing Dostie's medication, passports belonging to him and his daughter, vehicle registration and insurance card for the 1995 Ford Mustang, the garage door opener, keys to his 1999 Harley Davidson motorcycle and 2004 Dodge Ram truck. Further, the burglar took a paycheck stub and other personal papers.

{¶ 7} Finally, after reporting the burglary to the Maple Heights Police Department and providing them with a list of the rare coins that were taken from the home, Dostie also contacted coin dealers, as well as pawn shops throughout the area, to alert them of possible sales of his property.

{¶ 8} Dostie's daughter, Michelle,[2] testified that she returned home from school on April 21, 2009, and found the garage door opened. Michelle

---

[2] We will refer to this witness by her first name because of the shared last

immediately noticed that the red 1995 Ford Mustang was missing and that the Harley Davidson motorcycle had been moved to the opposite side of the garage. Michelle called her father to inquire whether her aunt had borrowed the Mustang. Michelle's father indicated that her aunt had not borrowed the car and instructed her to check the house, while he called the police.

{¶ 9} Rebecca Masters, the manager of Bedford Jewelry and Coin, testified that on April 22, 2009, Shabazz, accompanied by another male, entered her shop and attempted to sell her gold and silver coins, as well as a silver bar. Masters stated that Shabazz indicated that the items were from an inheritance. Masters had been alerted earlier that day by Dostie, who faxed her a list of the coins that had been stolen from his home.

{¶ 10} Masters testified that the individual who accompanied Shabazz to the store asked to use her restroom, but she told him he could not, and suggested he go to the restaurant next door. Masters surreptitiously signaled her niece to summon the police, while she feigned interest in the coins by having Shabazz fill out paperwork and provide identification. The police arrived a short time later, arrested Shabazz and the other male, who had gone next door to the restaurant.

{¶ 11} Matthew Berger and William Blaha, officers with the Maple Heights Police Department, testified that on April 22, 2009, they responded to

name with her father.

the Bedford Coin and Jewelry where they arrested Shabazz, as well as the other male that had accompanied him to the store, and confiscated the items Shabazz was trying to sell.

{¶ 12} Patrolmen Berger and Blaha conducted an inventory tow sheet of the vehicle Shabazz and his companion had traveled in to the coin store. The patrolmen found several items in the vehicle that had been taken from Dostie's home, including, but not limited to rolls of coins, passports belonging to Dostie and his daughter, a prescription bottle, a Dell computer, garage door opener, and four sets of keys.

{¶ 13} Patrolman Justin Ludwig, also of the Maple Heights Police Department, testified that on April 21, 2009, he responded to Dostie's home on report of a burglary. Patrolman Ludwig testified that while he was at Dostie's home, he heard over the radio that a robbery had taken place at a Dollar General store and the suspects had driven away in a red sports car. Due to the very close vicinity of the burglary and the robbery, Patrolman Ludwig notified dispatch that the vehicle involved in the robbery might be the one that had been taken from Dostie's home. Patrolman Ludwig later discovered Dostie's red Ford Mustang a few blocks away from the Dollar General store.

{¶ 14} Crystal Gibson testified that she is the manager of the Dollar General store located on Lee Road South in Maple Heights, Ohio. Gibson

testified that on April 21, 2009, two individuals entered the store and robbed them at gunpoint. Gibson stated that a tall, heavy set, black male, who was wearing a sweatshirt with a flame on the front, brandished a shotgun, while the other individual was wearing a black leather jacket and a bandana over his face. Gibson testified that the second individual did not have a gun, but came behind the counter and took the money out of the cash register. Gibson stated the two individuals fled in a red sports car.

{¶ 15} Shabazz's codefendant, Merritt, testified that he agreed to testify against Shabazz in exchange for a total prison sentence of 18 months. Merritt testified that on April 21, 2009, Shabazz contacted him and indicated that he intended to commit a robbery. Merritt met with Shabazz around 11:00 in the morning, drove past a house that Shabazz indicated he had just burglarized, and where he had obtained the red Ford Mustang.

{¶ 16} Merritt stated that Shabazz gave him a shotgun and they drove to the Dollar General store in the red Ford Mustang. Merritt and Shabazz entered the store, Merritt held the gun while Shabazz emptied the cash register. They both fled the scene and returned to Shabazz's apartment in Maple Heights.

{¶ 17} The jury found Shabazz guilty of one count of receiving stolen property, but acquitted him of the remaining charges. The trial court found Shabazz guilty of having weapons while under disability. On March 31,

2010, the trial court sentenced Shabazz to prison terms of five years for having weapons while under disability and one year for receiving stolen property. The trial court ordered the sentences to run concurrently.

## Speedy Trial

{¶ 18} In the first assigned error, Shabazz argues the trial court erred when it denied his motion to dismiss for a violation of his right to a speedy trial.

{¶ 19} When an appellate court reviews an allegation of a speedy trial violation, it "should apply a de novo standard of review to the legal issues but afford great deference to any findings of fact made by the trial court." *State v. Barnes*, Cuyahoga App. No. 90847, 2008-Ohio-5472, ¶17.

{¶ 20} The Sixth and Fourteenth Amendments to the United States Constitution, and Section 10, Article I of the Ohio Constitution, guarantee a criminal defendant the right to a speedy trial. See, e.g., *Barker v. Wingo* (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101; *State v. O'Brien* (1987), 34 Ohio St.3d 7, 516 N.E.2d 218. In *Barker*, the United States Supreme Court stated that "[a] balancing test necessarily compels courts to approach speedy trial cases on an ad hoc basis." Id. at 530. The court identified four factors that courts should consider in determining whether the right to a speedy trial has been violated: (1) the length of the delay; (2) the reason for

the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. Id. at 530.

{¶ 21} The *Barker* court determined, however, that the states are free to prescribe a reasonable period within which to bring criminal defendants to trial consistent with constitutional standards. To that end, in order to comply with the *Barker* decision, the Ohio General Assembly enacted R.C. 2945.71. *State v. Lewis* (1990), 70 Ohio App.3d 624, 591 N.E.2d 854, citing *O'Brien*.

{¶ 22} R.C. 2945.71 requires that felony charges be brought to trial within 270 days after a person's arrest. R.C. 2945.71(C)(2). Once the statutory limit has expired, the defendant has established a prima facie case for dismissal. *State v. Howard* (1992), 79 Ohio App.3d 705, 607 N.E.2d 1121. At that point, the burden shifts to the state to demonstrate that sufficient time was tolled pursuant to R.C. 2945.72. *State v. Geraldo* (1983), 13 Ohio App.3d 27, 468 N.E.2d 328. If the state has violated a defendant's right to a speedy trial, then the court must dismiss the charges against the defendant. R.C. 2945.73(B).

{¶ 23} Pursuant to R.C. 2945.72, however, speedy trial time may be tolled by several events, including the following:

> **"(D) Any period of delay occasioned by the neglect or improper act of the accused;**

**"(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;**

**" * * ***

**"(G) Any period during which trial is stayed pursuant to an express statutory requirement, or pursuant to an order of another court competent to issue such order;**

**"(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion[.]"**

{¶ 24} In accordance with the speedy trial provisions, the statutory time period begins to run on the date the defendant is arrested; however, the date of arrest is not counted when computing the time period. *State v. Masters*, 172 Ohio App.3d 666, 2007-Ohio-4229, 876 N.E.2d 1007, citing *State v. Stewart* (Sept. 21, 1998), 12th Dist. No. CA98-03-021. If the defendant is incarcerated following his arrest, each day spent in jail "on a pending charge" acts as three days toward speedy trial time. R.C. 2945.71(E). If he is not incarcerated following his arrest, the speedy trial time is counted on a one-for-one basis. *State v. Thieshen* (1977), 55 Ohio App.2d 99, 379 N.E.2d 622.

{¶ 25} If the defendant is not arrested for the offense, speedy trial time begins on the day he is served with the indictment. *State v. Pirkel*, Cuyahoga App. No. 93305, 2010-Ohio-1858. If a capias must be issued for the accused,

speedy trial time is tolled for this time period. *State v. Ennist*, Cuyahoga App. No. 90076, 2008-Ohio-5100.

**{¶ 26}** A defendant's demand for discovery or a bill of particulars tolls the speedy trial period for a "reasonable time," which this court has interpreted to mean 30 days. *State v. Byrd*, Cuyahoga App. No. 91433, 2009-Ohio-3283; *State v. Barb*, Cuyahoga App. No. 90768, 2008-Ohio-5877. Conversely, a defendant's failure to respond to a prosecution's request for reciprocal discovery, beyond a "reasonable time" for doing so, tolls the running of speedy trial time pursuant to R.C. 2945.72(D). Byrd at ¶15, citing *State v. Palmer*, 112 Ohio St.3d 457, 2007-Ohio-374, 860 N.E.2d 1011.

**{¶ 27}** Motions filed by the defendant tolls the speedy trial time under R.C. 2945.72(E) for a "reasonable period" to allow the state an opportunity to respond and the court an opportunity to rule. *State v. Sanchez*, 110 Ohio St.3d 274, 2006-Ohio-4478, 853 N.E.2d 283. In addition, the period is also tolled by "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion[.]" R.C. 2945.72(H); *State v. Baker* (1993), 92 Ohio App.3d 516, 636 N.E.2d 363.

**{¶ 28}** Further, pursuant to R.C. 2945.72(H), sua sponte continuances requested by the court may toll speedy trial time. *Pirkel*. "A sua sponte continuance must be properly journalized before the expiration of the speedy

trial period and must set forth the trial court's reasons for the continuance." Id., quoting *State v. Weatherspoon*, 5th Dist. No. 2006CA0013, 2006-Ohio-4794. "The record of the trial court must * * * affirmatively demonstrate that a sua sponte continuance by the court was reasonable in light of its necessity or purpose." *State v. Lee* (1976), 48 Ohio St.2d 208, 209, 357 N.E.2d 1095.

{¶ 29} Finally, a motion to continue that is filed by the state may toll speedy trial time so long as the trial record affirmatively demonstrates the necessity for a continuance and the reasonableness thereof. *State v. Myers*, 97 Ohio St.3d 335, 2002-Ohio-6658, 780 N.E.2d 186. A prosecuting attorney's motion to continue based on the unavailability of a witness acts to extend the speedy trial provisions if the length of the delay is reasonable. *State v. Saffell* (1988), 35 Ohio St.3d 90, 518 N.E.2d 934. Moreover, if the state's continuance is not reasonable, the continuance must be charged against the state for speedy trial purposes. *State v. Nelson*, 12th Dist. No. CA2007-11-046, 2009-Ohio-555, citing *State v. Baker*, 12th Dist. No. CA2005-05-017, 2006-Ohio-2516.

{¶ 30} Applying all of the foregoing, we note that Shabazz was arrested in Case No. CR-524126 on April 22, 2009. Applying the speedy trial period from the day after Shabazz's arrest, the state was required to bring him to

trial no later than Monday, January 18, 2010, unless that period was tolled by some event as outlined above.

{¶ 31} The record indicates that Shabazz was held in jail without bail solely on the pending charges from April 23, 2009, until May 19, 2009, when he filed a motion for discovery. During this 27 day period, the time ran on a three-for-one basis bringing the total to 81 days. R.C. 2945.71(E). Shabazz's motion for discovery, filed on May 19, 2009, tolled the speedy trial time until the state answered or for a reasonable time. *Sanchez,* supra.

{¶ 32} On June 1, 2009, a pretrial was held and Shabazz requested a continuance until June 18, 2009, citing further discovery. On June 18, 2009, the previously scheduled pretrial was continued to July 1, 2009, at defendant's request because his attorney was engaged in trial. On July 1, 2009, a pretrial was held, but continued to July 14, 2009, at Shabazz's request. On July 14, 2009, the pretrial was continued at Shabazz's request until July 22, 2009. The above continuances at Shabazz's request tolled the time until July 22, 2009. Thus, as of July 22, 2009, 81 days of Shabazz's speedy trial time had been exhausted.

{¶ 33} On July 22, 2009, a pretrial was held, trial was scheduled for July 28, 2009, and Shabazz's speedy trial began running again on a three-for-one basis. On July 28, 2009, the previously scheduled trial was reset to August 13, 2009, because the trial court was engaged in another trial. As of August

13, 2009, 22 calendar days elapsed on a three-for-one basis, for a total of 66 speedy trial days. Thus, by August 13, 2009, 147 days of Shabazz's speedy trial time had been exhausted.

**{¶ 34}** On August 13, 2009, pursuant to a joint request of the state and Shabazz, the trial was continued to August 31, 2009. The joint request tolled the running of the speedy trial time. In addition, the record indicates that as of August 13, 2009, a foreign warrant[3] was filed against Shabazz, which means that he was no longer being held in jail solely on the pending charges. Thus, from this point forward, the speedy trial days were counted one-for-one.

**{¶ 35}** On August 31, 2009, the state requested a continuance to September 9, 2009. Shabazz's speedy trial time began running again and ran for a total of 10 days. Thus, as of September 9, 2009, 157 days of Shabazz's speedy trial time had been exhausted.

**{¶ 36}** On September 9, 2009, Shabazz requested a continuance to September 25, 2009, which operated to toll the speedy trial time. On September 29, 2009, Shabazz requested a continuance until October 6, 2009, which further tolled the speedy trial time. In addition, on September 29, 2009, Shabazz was arraigned on a new case.

---

[3] Shabazz was indicted on a separate case in another jurisdiction, which triggered the one-for-one count.

{¶ 37} On October 6, 2009, a pretrial was conducted and Shabazz requested a continuance until October 14, 2009, which continued the tolling of his speedy trial time. On October 14, 2009, a pretrial was conducted; Shabazz requested a continuance until October 27, 2009, further tolling his speedy trial time. On October 27, 2009, Shabazz requested another continuance to November 10, 2009, because of two new pending cases, which continued the tolling of his speedy trial time.

{¶ 38} On November 10, 2009, a pretrial was conducted and Shabazz requested a two day continuance, which further tolled his speedy trial time. On November 12, 2009, a pretrial was conducted and Shabazz's trial was scheduled for January 4, 2010. Thus, as of November 12, 2010, Shabazz's speedy trial time began running again and continued running until the scheduled date of trial. Between November 12, 2009 and January 4, 2010, 63 calendar days had passed. Thus, as of January 4, 2010, 220 days of Shabazz's speedy trial time had been exhausted.

{¶ 39} On January 4, 2010, Shabazz requested a one day continuance of trial, which again served to toll the running of his speedy trial time. On January 5, 2010, the trial was rescheduled to January 27, 2010, Shabazz's speedy trial time began running, and ran for 23 calendar days. Thus, as of January 27, 2010, 243 days of Shabazz's speedy trial time had been exhausted.

**{¶ 40}** On January 27, 2010, the case was called for trial, but Shabazz requested a continuance to February 16, 2010, which operated to toll his speedy trial time. On February 9, 2010, Shabazz filed a motion to dismiss for violation of his right to a speedy trial. This motion to dismiss operated to continue the tolling of his right to a speedy trial. R.C. 2945.72(E).

**{¶ 41}** On February 16, 2010, Shabazz requested a one day continuance of the scheduled trial. On February 17, 2010, Shabazz requested a continuance until February 22, 2010, which operated to further toll the running of his speedy trial time. On February 22, 2010, the trial court continued the trial to February 25, 2010, because it was engaged in another trial. On February 25, 2010, the trial court continued the trial to March 1, 2010, because it was still engaged in trial. These two continuances operated to restart the running of Shabazz's speedy trial time. Between February 22, 2010 and March 1, 2010, 8 calendar days elapsed. Thus, as of March 1, 2010, 251 days of Shabazz's speedy trial time had been exhausted.

**{¶ 42}** On March 1, 2010, Shabazz requested a continuance of trial until March 15, 2010, in order to obtain an expert consultation on the DNA evidence. Shabazz's continuance operated to toll the running of his speedy trial time. On March 15, 2010, Shabazz's trial commenced. Thus, as of that date, based on our review of the docket, 251 days of Shabazz's speedy trial time had been exhausted.

{¶ 43} In accordance with all of the foregoing, we conclude the trial court properly denied Shabazz's motion dismiss the indictment. Based on our calculation, and recognizing tolling events to the extent permitted by law, events largely occasioned by Shabazz's numerous continuances, 251 speedy trial days elapsed in this matter, which is inside the statutory limit of 270 days. Accordingly, we overrule the first assigned error.

## Manifest Weight

{¶ 44} In the second assigned error, Shabazz argues his convictions were against the manifest weight of the evidence.

{¶ 45} In *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, the Ohio Supreme Court addressed the standard of review for a criminal manifest weight challenge, as follows:

> **"The criminal manifest-weight-of-the-evidence standard was explained in *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. In *Thompkins*, the court distinguished between sufficiency of the evidence and manifest weight of the evidence, finding that these concepts differ both qualitatively and quantitatively. Id. at 386, 678 N.E.2d 541. The court held that sufficiency of the evidence is a test of adequacy as to whether the evidence is legally sufficient to support a verdict as a matter of law, but weight of the evidence addresses the evidence's effect of inducing belief. Id. at 386-387, 678 N.E.2d 541. In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's? We went on to hold that although there may be sufficient evidence to support a judgment, it could nevertheless be against the manifest weight of the evidence. Id. at 387, 678 N.E.2d 541. 'When a court of**

**appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony.'  Id. at 387, 678 N.E.2d 541, citing *Tibbs v. Florida* (1982), 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652."**

{¶ 46} In the instant case, Shabazz claims the jury lost its way in convicting him of receiving stolen property and, likewise, the trial court lost its way in convicting him of having weapons while under disability.  In making these claims, Shabazz contends that both the trial court and the jury lost their way by relying on the testimony of Merritt, who was promised an 18 month sentence in exchange for his testimony, when, in reality, Merritt was facing up to 90 years in prison on all the charges.

{¶ 47} Preliminarily, we note the determination of weight and credibility of the evidence is for the trier of fact.  *State v. Chandler*, 10th Dist. No. 05AP-415, 2006-Ohio-2070, citing *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212.  The rationale is that the trier of fact is in the best position to take into account inconsistencies, along with the witnesses' manner and demeanor, and determine whether the witnesses' testimonies are credible.  *State v. Williams*, 10th Dist. No. 02AP-35, 2002-Ohio-4503.

{¶ 48} Accordingly, an appellate court may not substitute its view for that of the jury, but our role "in resolving conflicts in the evidence" is to determine whether the jury lost its

way thereby creating a manifest miscarriage of justice that requires a new trial. *Thompkins* at 387.

{¶ 49} Here, we are not disposed to reach such a conclusion. At trial, Merritt admitted that he was testifying against Shabazz in exchange for an 18 month sentence, admitted that he had lied to detectives about his involvement in the robbery, and admitted that he had previous convictions including, but not limited to aggravated robbery, aggravated burglary, and assault on a peace officer. Both the jury and the trial court were in a position to observe Merritt's manner and demeanor and take into account any inconsistencies in his testimony.

{¶ 50} Significantly, given that the jury acquitted Shabazz on all the charges relating to the robbery of the Dollar General store, they evidently chose not to believe all of Merritt's testimony. Moreover, it is undisputed that when Shabazz was arrested, while attempting to sell the coins, he was found in possession of many of the other items that were taken from Dostie's home. Thus, whether the jury believed that it was Shabazz or Merritt who burglarized Dostie's home, it is without question that Shabazz was attempting to sell and was in possession of property that was stolen. As such, Shabazz's claim that the jury lost its way in finding him guilty of receiving stolen property is unfounded.

{¶ 51} As it relates to Shabazz's conviction for having weapons while under disability, regardless of whether Merritt's overall testimony was suspicious, the trial court at least believed Merritt's testimony that Shabazz had a shotgun and gave it to him to use in the robbery. *State v. Morris*, Cuyahoga App. No. 94923, 2011-Ohio-824. This possession by Shabazz is enough to convict him of having a weapon while under disability. Id. Accordingly, we overrule Shabazz's second assigned error.

Judgment affirmed.

It is ordered that appellee recover of appellant its costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., and
EILEEN A. GALLAGHER, J., CONCUR